**Lawrence HECK and Peabody Coal Company, Appellants–Defendants,**

**v.**

**James L. ROBEY and Carol S. Robey, Appellees–Plaintiffs.**

**No. 63A01–9309–CV–285.**

Court of Appeals of Indiana, First District.

March 17, 1994.

Keith M. Wallace, Wright, Evans & Daly, Evansville, for appellant-defendant Lawrence Heck.

William P. Wooden, Kevin C. Tyra, Wooden McLaughlin & Sterner, Indianapolis, for appellant-defendant Peabody Coal Co.

Barbara S. Barrett, Gerling Law Offices, P.C., Evansville, for appellees-plaintiffs.

ROBERTSON, Judge.

Lawrence Heck and Peabody Coal Company bring this interlocutory appeal after the trial court denied their motions for summary judgment. The trial court determined that Indiana does not extend the "fireman's rule" to a paramedic such as James L. Robey. We reverse.

Robey was a licensed paramedic who worked for Warrick Emergency Services, a part of Warrick County Hospital, Inc., which was under contract with the Warrick County Commissioners to provide emergency and paramedic medical services in Warrick County, Indiana. On January 16, 1990, Heck, an employee of Peabody Coal, lost control of a company pickup truck on mine property and wrecked the truck upside down in a ditch along side the mine road.

Robey and his partner responded to the 911 call for the incident, as usual, through the fire department. Robey was in charge at the scene and summoned some firefighters to help extricate Heck from the truck. As he helped lift Heck from the ditch, Robey sustained a back injury. Robey had detected the odor of alcohol on Heck, and a subsequent test measured Heck's blood alcohol content above the legal limit for operating a motor vehicle. Robey and his wife filed suit in negligence for the injury to his back.

Heck and Peabody Coal subsequently filed motions for summary judgment based on the "fireman's rule." The trial court denied the motions because public policy rationale "will dictate that Indiana will decline to extend the 'Fireman's Rule' to a paramedic or EMT . . ."

■ A summary judgment is proper only where there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Id.* An order denying a motion for summary judgment is generally not an appealable interlocutory order; but, where the parties present no con-

flict in the operative facts and agree that there is no genuine issue of material fact necessitating resolution and where the defendant raises defenses within its motion for summary judgment which, if applicable, would entitle it to a judgment as a matter of law, the requisites of the rule which allows appeals from interlocutory orders are met. *Standard Mutual Ins. Co. v. Boyd* (1983), Ind.App., 452 N.E.2d 1074. On review of a ruling on summary judgment, this Court applies the same standard applicable in the trial court. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. The appellants must persuade this court that the determination below was erroneous. *Indiana Dept. of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313.

■ In Indiana, one who has, through his negligence, endangered the safety of another may be held liable for the injuries sustained by a third person in attempting to save such other from injury. *Lambert v. Parrish* (1986), Ind., 492 N.E.2d 289, 291 (quoting *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 167, 111 N.E.2d 280, 284 (quoting 65 C.J.S., Negligence)). This is known as the "rescue doctrine." *See id.* The "fireman's rule," however, is said to create an exception to the liability imposed by the rescue doctrine. *Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211, 215. The fireman's rule rests on three distinct but related theoretical pedestals: the law of premises liability, the defense of incurred risk, and the concerns of public policy. *Fox v. Hawkins* (1992), Ind. App., 594 N.E.2d 493, 495.

### THE ORIGIN AND EXTENSION OF THE RULE

Our supreme court recognized the first ground for the fireman's rule one hundred years ago. *See Woodruff v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113. A fireman enters the premises under a license given by law for the purpose of extinguishing a fire therein at the time. *Id.* In such a situation, the "licensor owes to the mere licensee [the fireman] no duty except that of abstaining from any positive wrongful act which may result in his injury ... and ... the licensee takes all the risks as to the safe condition of the premises upon which he enters." *Id.* at 442, 34 N.E. at 1117. This Court followed and upheld this basis for the Rule in *Pallikan v. Mark* (1975), 163 Ind.App. 178, 322 N.E.2d 398.

This Court, however, eventually applied the fireman's rule to a case which did not involve the law of premises liability. Without citation to authority, we stated:

> The [fireman's] rule basically provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity.

*Koehn,* 495 N.E.2d at 215.[1]

If this statement of the fireman's rule is only "basically" what the rule provides, then it was not specifically what the rule provides and not all that the rule provides. The terms "particular risks," "the situation," and "professional capacity" were yet to be defined. The decisions in *Koehn* and subsequent cases have attempted to provide that specificity.[2] In the process, this Court has

---

1. The outcome of the case appears not to have depended upon the application of the fireman's rule. The trial court had denied summary judgment, and this Court affirmed the denial. The fireman's rule was applied to an off-premises rescue, but a question of material fact existed about whether the fireman was acting in his official capacity. *Koehn,* 495 N.E.2d at 215. The evidence allowed the inference that a duty was owed to the rescuer because the fireman was not acting in his official capacity. Summary judgment was therefore inappropriate. This is so regardless of whether, under the facts of the case, the trier of fact would eventually determine that the fireman was acting in his official capaci-

ty, that is, regardless of whether the fireman's rule would ultimately prevent recovery.

2. For example, in *Koehn,* the fireman's status, that is, whether he had been acting in his official [professional] capacity when he had attempted to make a rescue after he had happened upon the scene of a power line accident, was a material question of fact which supported the denial of summary judgment. *Id.* In *Sports Bench, Inc. v. McPherson* (1987), Ind.App., 509 N.E.2d 233, *trans. denied,* however, the question of the off duty police officers' status was not a material question of fact, as the officers could not argue that they had not been within the scope of their

recognized the importance of incurred risk and public policy as reasons for the rule.

In *Koehn*, the Court examined the principles behind the law of premises liability as it applies to the fireman's rule. Then, along with notions of incurred risk and public policy, the Court analogized and applied those principles to off-premises liability. The court stated:

> ... because it would create a dichotomy to establish policies which deny recovery to a fireman injured on-premises but allows recovery to a fireman injured off-premises, the fireman's rule must be applied to off-premises injuries sustained by firemen acting in their professional capacity.... [S]o the fireman incurs the risks inherent in the situation when he undertakes an off-premises rescue in his official capacity.

*Id.*

In *Koop v. Bailey* (1986), Ind.App., 502 N.E.2d 116, this Court applied the *Koehn* statement of the fireman's rule to a police officer who had been injured by the owners' son, apparently on the premises. The Court examined whether the police officer's occupation had exposed him to the particular risks and whether he had responded in his professional capacity. The court concluded that both of these elements were met and that the officer could not hold the owners of the premises liable for negligence. The Court concluded that, "the trial court was correct in its finding that [the police officer] was a licensee." *Id.* at 118. Despite the use of the *Koehn* statement of the fireman's rule, however, the facts of the case fell squarely within the premises liability rationale of *Woodruff*.[3]

Nevertheless, the fireman's rule applies to police officers. *Sports Bench, Inc. v. McPherson* (1987), Ind.App., 509 N.E.2d 233, *trans. denied.*

Despite this somewhat shaky start, the fireman's rule is firmly established in this jurisdiction. *Id.* at 236. The rule, as noted, has been applied to police officers. *Id.* Further, this Court has, at various times, stated that the rule applies to "public safety professionals," to "public safety officers" and to "other officers." *Fox*, 594 N.E.2d at 495, 496; *Sports Bench*, 509 N.E.2d at 235.

 We have stated that, if the rule is to be abolished, that action must come either from the legislature or from our supreme court. *Sports Bench*, 509 N.E.2d at 236. Nevertheless, the scope of the fireman's rule is a matter of our common law which may be adapted to fit the circumstances of the case. The application of the rule to this area has not been addressed in Indiana; but, in our view, the reasons for the fireman's rule justify an extension of the rule to a paramedic.

The Robeys brought suit in negligence, one element of which is a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff. *Webb*, 575 N.E.2d 992. Three factors must be balanced to impose a duty at common law: the relationship between the parties, the reasonable foreseeability of harm, and the concerns of public policy. *Id.* at 995. We will examine these factors in our determination of whether Heck and Peabody Coal indeed owed any duty to Robey.

---

peace keeping duties when they had acted to subdue and arrest a criminal. *Id.* at 235–236.

**3.** The police officers in *Koop* were called to the scene, *id.* at 117, as were the officers in *Kennedy v. Tri–City Health Center* (1992), Ind.App., 590 N.E.2d 140, 142, *trans. denied*. The officer injured in *Koop* was there solely upon his authority as a police officer, and it is this fact that secured his status as a licensee. *See Kennedy*, 590 N.E.2d at 142. The police officer's injuries in *Koop* apparently occurred on-premises, as shown by the correct finding that the police officer had been a licensee when injured by the owners' son. *Koop*, 502 N.E.2d at 118. It is *Woodruff*, however, which squarely applies to an on-premises case with a licensee. Thus, under the authority

of *Woodruff*, the owner in *Koop* did not "owe it as a duty at common law, independent of any statute or ordinance, to keep such building safe for firemen *or other officers*, who, in a contingency, may enter the same under a license conferred by law." *Woodruff*, 136 Ind. at 443, 34 N.E. at 1117 (emphasis supplied). The police officer in *Koop* had entered the premises either under a license conferred by law, that is, probable cause to arrest, or under a license from the owner. The officer had therefore taken all risks as to the safe condition of the premises upon which he had entered. *Id.* *See generally, Kinsey v. Bray* (1992), Ind.App., 596 N.E.2d 938, *trans. denied* (third person's presence or conduct as a condition on the land, and duty to control that person).

## RELATIONSHIP BETWEEN THE PARTIES

Robey is a paramedic. He works for Warrick Emergency Services, a part of Warrick County Hospital, Inc., which was under contract with the Warrick County Commissioners to provide emergency and paramedic medical services in Warrick County, Indiana. In this manner, Warrick County fulfills its essential purpose to provide emergency medical service. Ind.Code 16–31–1–2.

Under the arrangement, the hospital sends bills to individuals who have used the services but the County reimburses certain expenses if they are not covered by charges collected by the hospital. These expenses include the labor cost of the drivers, attendants, dispatchers, and director and include taxes, insurance, and benefits. Thus, Robey is a professional paramedic who provides emergency rescue services to the public and whose compensation is ultimately the responsibility of the taxpayers. From this, we conclude that he is within the classification of the "public safety professional" mentioned in *Fox*, 594 N.E.2d at 495.

The Robeys claim that the relationship between James Robey and Peabody Coal was that of rescuer and alleged tortfeasor and that the rescue doctrine applies and allows them a recovery in negligence. We note, however, that this is only one facet of the relationship. Another aspect of the relationship is that of a public safety professional and a premises owner[4] and taxpayer.

The Robeys also claim that the relationship between Robey and Heck was that of rescuer and alleged tortfeasor and, again, that the rescue doctrine applies and allows them a recovery in negligence. Once more, however, we note that this is not the extent of the relationship. Another side of the relationship is that of public safety professional and a member of the public.

## REASONABLE FORESEEABILITY OF HARM

Indiana recognizes the rescue doctrine and therefore recognizes that injury to the rescuer is reasonably foreseeable. Such harm is reasonably foreseeable not only to the tortfeasor, however, but to the rescuer, as well. Such harm is also reasonably foreseeable to firemen and police officers, but this does not prevent the fireman's rule from denying them recoveries for negligence. The reason for this is that public safety officers incur the inherent risks of the situation when they act in their professional capacities. *Fox*, 594 N.E.2d at 496 (quoting *Sports Bench*, 509 N.E.2d at 235) (emphasis added). With this "incur the inherent risks" language, however, we must distinguish between what is known as primary assumption of the risk and what is known as secondary assumption of the risk. *See generally*, 2 Harper, James and Gray, *The Law of Torts*, § 21 (1986).

The existence or non-existence of a duty owed by the defendant to the plaintiff for the prevention of the danger in question necessitates the determination of whether the risk or danger in question falls within the ambit of a duty owed by the defendant to plaintiff. *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 414–415, 379 N.E.2d 1004, 1011. Where defendant's duty does not include protection from the risk, either because of express or implied consent, plaintiff's conscious, voluntary incurrence of the risk will be in the "primary" sense. *Id.* (Citing Restatement (Second) of Torts §§ 496 B and 496 C[5]

---

4. The owner of a building in a populous city does not owe it as a duty at common law, independent of any statute or ordinance, to keep such building safe for firemen *or other officers*, who, in a contingency, may enter the same under a license conferred by law. *Woodruff*, 136 Ind. at 443, 34 N.E. at 1117 (emphasis supplied). A paramedic enters the premises under a license similar to the "license conferred by law" applicable to firefighters and police officers. For example, under some circumstances, the licensor may not have the right to exclude a paramedic. *See* I.C. 35–44–3–8.5 (A person who knowingly or intentionally obstructs or interferes with an emergency medical person performing or attempting to perform his emergency functions or duties as an emergency medical person commits obstructing an emergency medical person, a Class B misdemeanor). The duties and authority of these public safety professionals are limited, however, so we are not prepared to state that they constitute a type of "other officers," who may enter the premises under a license conferred by law, within the meaning of *Woodruff*.

5. The Restatement (Second) of Torts § 496 C (Implied Assumption of Risk), states:

(1965)) (emphasis original) (other citations omitted). Thus, primary incurrence of the risk involves a situation where no duty exists because the plaintiff has consciously and voluntarily consented to be exposed to the risk, whereas secondary incurrence of the risk involves a situation where a duty exists, the duty has been breached, and the plaintiff comes upon the risk or danger, knows of and appreciates its magnitude, but nevertheless accepts it voluntarily. *See id.* 379 N.E.2d at 1011–1012.

We believe the language that public safety officers "incur the inherent risks of the situation when they act in their professional capacities" refers to incurred risk in the "primary" sense because firemen and police officers implicitly consent to be exposed to the risks of their duties. *See, e.g., Armstrong v. Mailand* (1979), Minn., 284 N.W.2d 343. This is what is meant by the statement that the fireman's rule creates an exception to the liability imposed by the rescue doctrine. *See Koehn,* 495 N.E.2d at 215. The exception is that, where the fireman's rule is in force, no duty has been established.[6]

The same reasoning applies in the present case. By choosing work as a public safety professional, Robey entered into a relationship with taxpayers and members of the public. A paramedic knows the work involves certain risks and has, thereby, implic-itly agreed to relieve negligent persons of responsibility when the risks lead to foreseeable harm. In essence, Robey "consented" to the harm risked or "waived" an application of the rescue doctrine.

## PUBLIC POLICY

We are left with a situation in which the rescue doctrine indicates that a duty exists for a rescuer but the fireman's rule indicates that a duty does not exist for a professional rescuer, that is, a public safety professional who has chosen to incur the risks. However, when we consider the public policy concerns of both the rescue doctrine and the fireman's rule and then apply them to the facts of this case, we are led to the conclusion that public policy favors the fireman's rule.

First, we note that this case does not involve a bystander who, when the situation was thrust upon him, attempted to save another from injury. Here, we have the case of a public safety professional versus two taxpaying members of the public. The defendants, in essence, hired Robey and paid him to confront emergencies and rescue individuals; and Robey has consciously and voluntarily chosen to be exposed to the reasonably foreseeable harm inherent in his work.

Also, Robey is already compensated for the hazards and inherent risks of the calling

---

(1) Except as stated in Subsection (2), a plaintiff who fully understands a risk of harm to himself or his things caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain, or to permit his things to enter or remain within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk.
(2) The rule stated in Subsection (1) does not apply in any situation in which an express agreement to accept the risk would be invalid as contrary to public policy.
The Restatement (Second) of Torts § 496 A, Comment c. 2., explains what is meant by implied assumption of risk:
... [T]he plaintiff has *entered voluntarily into some relation* with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff. (Emphasis added).

**6.** Thus, primary assumption of the risk involves no breach of a duty owed to the firefighter. The firefighter may not recover for his injury even though he was quite reasonable in encountering the risk that caused it. *See, e.g.,* Note, *The Firefighter's Rule,* 1992 Wis.L.Rev. 2031, 2036–2037. Firefighters do not assume risks on a case-by-case basis but in the broad sense in which it is inherent in the occupation. By entering into the profession, a firefighter assumes certain dangers inherent in the profession. A firefighter is expected, and paid, to confront these hazards. *Id.;* Note, *Empty Pockets: Application of the Fireman's Rule to Emergency Medical Technicians,* 7 Contemp.Health L.Pol'y 339, 344–345 (1991).

Secondary assumption of the risk applies only when the firefighter's rule does not apply. That is, a breach of duty to the firefighter existed but the firefighter is guilty of contributory fault in deliberately choosing to encounter that risk. *Id.*

through pay, medical, disability, and pension schemes and worker's compensation. *Fox*, 594 N.E.2d at 496. A tort recovery would amount to a double recovery. Robey should not recover for the negligence that creates the very need for his employment when he has been paid and trained to confront those crises frequently created by negligent citizens. Further, he is present for emergency rescues not because of any private duty owed to the victim but because of the duty, grounded in the relation between him and the public, which is owed to the public as a whole to report at a moment's notice to an emergency situation.

The reasons behind the fireman's rule support an extension to a paramedic such as Robey. *See e.g., Carter v. Taylor Diving & Salvage Co.* (E.D.La.1972), 341 F.Supp. 628, *aff'd*, (5th Cir.1973), 470 F.2d 995; *Maltman v. Saucr* (1975), 84 Wash.2d 975, 530 P.2d 254. *But see, Lees v. Lobosco* (A.D.1993), 265 N.J.Super. 95, 625 A.2d 573 (overruling *Siligato v. Hiles* (1989), 236 N.J.Super. 64, 563 A.2d 1172); *Kowalski v. Gratopp* (1989), 177 Mich.App. 448, 442 N.W.2d 682; *Krause v. U.S. Truck Co.* (1990), Mo., 787 S.W.2d 708; *Solgaard v. Guy F. Atkinson Co.* (1971), 6 Cal.3d 361, 99 Cal.Rptr. 29, 491 P.2d 821. Our analyses of the relationship between the parties, the foreseeability of the harm, and the concerns of public policy support this conclusion.

Robey, whose occupation by nature exposes him to particular risks when he performs a rescue, may not hold another liable for negligence in creating the situation to which he responds in his professional capacity. Robey's occupation exposes him to the risk of back injury incurred when he lifts individuals from perilous places; and, in the present case, Robey responded in his professional capacity to the 911 call where he was exposed to just that risk. The fireman's rule therefore applies here,[7] and Heck and Peabody Coal owed no duty to Robey unless one of the exceptions [8] to the rule allows the duty to be imposed. *See Fox*, 594 N.E.2d at 498.

The Robeys, of course, assert that Heck's conduct falls within at least one of the exceptions to the fireman's rule. First, the Robeys claim that Heck engaged in a "positive wrongful" and "willful and wanton" act when he operated the truck while intoxicated. *See id.* The "positive wrongful" language appears in *Woodruff*, and the "willful and wanton" language appears in *Koop*. The courts referred to those phrases when they addressed the duty a landowner owes to a licensee. *Woodruff*, 136 Ind. at 442, 34 N.E. at 1117 (owes no duty except that of abstaining from any positive wrongful act which may result in his injury); *Koop*, 502 N.E.2d at 118 (only owes a duty of refraining from willfully or wanton injuring him). Thus, the courts addressed the same duty. In order to succeed on a claim of willful and wanton conduct, the Robeys were required to set out facts that demonstrate a purposeful design on Heck's part. *See Kennedy v. Tri–City Health Center* (1992), Ind.App., 590 N.E.2d 140, 142, *trans. denied.*

Second, the Robeys claim that Heck's conduct falls within the exception for the violation of a statute. It is not merely a violation of a statute, however, which brings an act within the exception but "violation of a statute or ordinance that establishes a duty for the benefit of public safety officers." *Fox*, 594 N.E.2d at 498.

The statute Heck is claimed to have violated is intended to benefit the general public on the highway, not paramedics performing a rescue of an intoxicated driver. *See e.g.,*

---

7. The Comparative Fault Act did not abolish the fireman's rule for the reasons stated in *Fox*, 594 N.E.2d at 497. Also, according to Prosser and Keeton, *The Law of Torts*, § 63 at 496 (5th ed. 1984), primary implied assumption of risk should continue to be an absolute bar after adoption of comparative fault because the principle is that of no duty, or no negligence, and so denies the existence of any underlying cause of action. *Accord Armstrong*, 284 N.W.2d 343.

8. The exceptions allow the professional rescuer to proceed in negligence where the circumstances are said to include: 1) imminent or ultrahazardous dangers, such as toxic or explosive chemicals; 2) active negligence or willful and wanton conduct [a positive wrongful act]; 3) hidden dangers known but not related to the unaware professional rescuer when the opportunity arose; and 4) violation of a statute or ordinance related to safety. *See generally, The Firefighter's Rule*, 1992 Wis.L.Rev. at 2038–2039.

*Woodruff,* 136 Ind. 431, 34 N.E. 1113; *Kennedy,* 590 N.E.2d 140, *trans. denied.* Heck's conduct was not a "positive wrongful" or "willful and wanton" act purposefully directed at paramedic Robey, and the statute in question was not "for the benefit of public safety officers." The Robeys therefore have not shown that their case falls within one of the exceptions to the fireman's rule.

There is no genuine issue about any material fact; and, as the moving parties, Heck and Peabody Coal were entitled to judgment as a matter of law. A review of the undisputed facts shows that the fireman's rule applies and the exceptions do not. Therefore, no duty was owed to Robey. In light of this, the decision to deny the defendants' motions for summary judgment was erroneous. The judgment below is reversed.

Judgment reversed.

BAKER and NAJAM, JJ., concur.