Charles THOMPSON, Virginia Thompson, Robert Deckard, Tammy L. Deckard, Donald Thomas, Patricia Thomas, James L. Greeson, Judy Greeson, Christopher Pitts, Mary Kay Pitts, John L. Armstrong, Appellants–Plaintiffs,

v.

The MURAT SHRINE CLUB, INC., and Murat Temple Association, Inc., Appellees–Defendants.

No. 29A02–9208–CV–367.

Court of Appeals of Indiana, Second District.

Sept. 7, 1994.

Kevin P. Farrell, Yosha, Cline, Farrell & Ladendorf, Indianapolis, for appellants.

Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for appellees.

SULLIVAN, Judge.

On February 9, 1988, several members of the Indianapolis Fire Department (Firefighters) were injured while fighting a fire at the

Murat Shrine Club and Murat Temple Association (collectively "Murat"). Upon arriving at the scene, the firefighters located the source of the fire in a second floor storage room. The flames in the room were extinguished within minutes. During this time, some of the firefighters discovered a loft, or attic, above the storage room.

The loft, constructed in 1983 by Murat employees, provided additional storage space for paper goods and miscellaneous kitchen items. An open stairway from the storage room floor led to a closed door that opened into the loft. Using a hose that had been dragged up the stairs, one of the firefighters sprayed a two-second burst of water and extinguished a "spot" fire in the loft. Moments later, as the fireman crawled across the loft to determine whether the fire was out, the loft collapsed, trapping and injuring several firefighters.

 The trial court granted summary judgment in favor of the defendants Murat Shrine Club and Murat Temple Association. In order to prevail upon appeal, the Firefighters must establish the existence of a genuine issue of material fact from the materials designated to the trial court. Ind.T.R. 56. The restated issues presented upon appeal are:

I. Whether genuine issues of material fact exist that show defendants breached the duty of care owed to plaintiffs by maintaining a latent danger, by entrapment, or through willful or wanton misconduct;

II. Whether Indiana should adopt a standard of reasonable care under the circumstances owed all lawful entrants notwithstanding present distinctions between the duties owed licensees and invitees;

III. Whether firefighters who enter private property in the scope of their employment should be reclassified as invitees; and

IV. Whether premises liability should be abandoned either in favor of assumption of risk or in favor of public policy as the basis for the fireman's rule?

We affirm.

## I. Duty of Care

 Indiana had long held that the Fireman's Rule bars negligence actions seeking recovery for injuries sustained by firefighters in the line of duty. In *Woodruff v. Bowen* (1893) 136 Ind. 431, 34 N.E. 1113, our Supreme Court classified firefighters as licensees to whom a landowner owes no duty "except that of abstaining from any positive wrongful act which may result in his injury...." *Id.* at 442, 34 N.E. at 1117. Further, a firefighter is deemed to take "all risks as to the safe condition of the premises upon which he enters." *Id.* Unless a statute or ordinance imposes a duty to keep a building safe *specifically* for the benefit of firefighters "in case of a fire," the landowner's duties are those prescribed by common law. *Id.* at 443–44, 34 N.E. at 1117.

In *Woodruff,* a fireman was killed when a roof upon which he ventured to fight a fire collapsed without warning. The building had been remodeled prior to the fire, but the owner neither increased the strength of the walls nor altered the foundation to the degree necessary to provide sufficient support for the building's uses. The owner of the building knew the building could not support the weight of the stock of stationery and books stored therein and, furthermore, knew that the building would not withstand any additional weight such as the weight of water in case of fire. The prevailing city ordinance declared it unlawful to "construct, erect or maintain any unsafe, insecure and dangerous wall, building or structure within the limits of [Indianapolis]...." *Woodruff, supra,* at 435–36, 34 N.E. at 1115. Any wall, structure or building that was "likely to fall, or to take fire" was deemed unsafe and insecure. *Id.*

Despite the building owner's knowledge that the building was likely to fall because it was insecure and unsafe, the owner concealed this condition from the fire department when it responded to a fire upon the premises. The firefighters proceeded to throw water upon the building and its contents. Our Supreme Court attributed the building collapse to the weight of the stock and the water used to douse the flames as well as to pre-existing structural inadequacies of the building. These factors combined

to cause the walls to give way "without being weakened or impaired at all in their bearing strength by the fire which was burning." *Id.* at 438, 34 N.E. at 1116. The Court also concluded that the ordinance in question was not drafted to ensure the safety of firemen in the case of fire; rather, it was of general application. *Id.* at 444, 34 N.E. at 1117.[1] So long as the building was safe under ordinary circumstances, the owner was not required to anticipate extraordinary events, e.g., that the building tenant stored stationery upon which large quantities of water were thrown thereby "putting [the building] to an extraordinary strain." *Id.* at 445, 34 N.E.2d at 1118.

Today, the Fireman's Rule encapsulates the principle that public safety officers "whose occupations by nature expose them to particular risks, may not hold another negligent for creating[2] the situation to which they respond in their professional capacity." *Kennedy v. Tri–City Health Center* (1992) 3d Dist.Ind.App., 590 N.E.2d 140, 142, *trans. denied* (quoting *Koehn v. Devereaux* (1986) 3d Dist.Ind.App., 495 N.E.2d 211, 215). Notwithstanding *Woodruff, supra,* and its progeny, the Firefighters cite positive wrongful acts, identified in *Kennedy, supra,* which might permit recovery. The Firefighters contend: (1) that Murat knew, but failed to warn them, that the loft was a latent danger; (2) that Murat's conduct in constructing the loft was so grossly deviant from everyday standards as to render Murat's conduct willful or wanton; and (3) that the loft constituted an entrapment.

The Firefighters place substantial reliance upon the fact that the Murat failed to obtain a building permit[3] before the loft was constructed in contravention of local ordinances. The gist of this argument is that, had a permit been obtained, the oversight provided by architects, engineers, or building inspectors would have averted any potential structural defect or safety concern. The Firefighters equate the failure to obtain a permit (as well as the failure to secure the advice of an architect or engineer) with a "positive wrongful act." In the Firefighters' opinion, this presents a genuine issue of material fact as to whether the failure was willful or wanton conduct, i.e., that the Murat proceeded without regard to the required procedures which led, eventually, to the concealment of a latent danger and the maintenance of an entrapment.

We disagree. First, and foremost, even if the Murat should have either secured professional advice or obtained a permit before altering the storage room, the Firefighters have failed to show that the conduct violated a statute drafted to insure the safety of firemen in case of a fire. *Woodruff, supra* (distinguishing ordinances for the safety of "public safety officers" from those providing for the safety of the general public). Thus, failure to proceed in conformity with building regulations does not trigger liability under *Woodruff, supra.*

Second, even if the Murat had used alternative[4] construction methods that arguably

---

1. There can be little doubt that the ordinance involved in *Woodruff* encompassed a safety purpose with regard to members of the general public. *See Carroll v. Joe,* (1994) 3rd Dist.Ind. App., 638 N.E.2d 467, 471 (Sullivan, J., dissenting).

2. The application of the Fireman's Rule is not limited, as Firefighters suggest, only to the negligent act *creating* a fire. The Firefighters adamantly contend that the Rule is "specifically designed to protect landowners from liability for fire-related injuries." Reply Brief of Appellant at 3. Consequently, they argue that whether their injuries "were caused by a fire-related injury is hotly contested in this case." *Id.* This position, however, ignores caselaw to the contrary. Clearly, liability may attach even if negligence *unrelated* to the cause of the fire is the source of the injury. *See Woodruff, supra* (firemen injured due

to building's structural default); *Pallikan v. Mark* (1975) 1st Dist., 163 Ind.App. 178, 322 N.E.2d 398 (fireman injured when stepping into large hole covered with grass and weeds on property).

3. Apparently, prior to receiving a permit, plans and specifications would have been filed with and approved by the state building commissioner. I.C. 22–11–1–12 (Burns Code Ed.1974), *repealed by* Acts 1984, P.L. 8, § 136 and by Acts 1987, P.L. 245, § 22. For present provisions, see I.C. 22–12–2 through 22–12–5 (Burns Code Ed.1992 & Supp.1993).

4. A professional engineer, who reviewed the methods employed by the Murat employees who constructed the loft, opined that had the loft been built in compliance with the Uniform Building Code, it would not have collapsed during the fire.

might have rendered the loft more structurally sound, the loft *as constructed* seemed safe and secure. There was no evidence that the loft was built with disregard for its structural soundness. Although no outside advice was sought, the Murat employees discussed various ways of securing the platform, ultimately agreeing that a system of beams and joists anchored in the concrete block walls provided adequate support. Further, the Murat employees who used the loft neither detected any shifting or pulling of the loft nor detected any "give" to the loft. Even with the added weight of several adults moving about the loft, the loft did not vibrate, sway, or sag. The Murat staff considered the loft safe and deemed it structurally secure. Given the consensus as to the loft's integrity, it simply does not follow that the Murat knew, but failed to warn the Firefighters, that the loft was a latent danger. By its conduct, the Murat demonstrated the exact opposite, i.e., through daily use, the loft did not pose a known or unanticipated danger.

■ Third, the Firefighters seize upon a reference to the loft as a "firetrap" as evidence of a genuine issue of material fact as to whether the loft was an entrapment.[5] After the fire, John Preston, the Murat's General Manager, discussed plans to rebuild the storage room in a manner that would eliminate a pre-existing firetrap. In further testimony, however, Preston clarified that it was a fireman who, after the fire, called the loft a firetrap. As is often the case, the illumination of hindsight often suggests a better course of conduct once the danger is past. Be that as it may, an after-the-fact characterization does not provide the necessary basis upon which to establish entrapment.

## II. & III. Licensee Status

■ The Firefighters essentially challenge the common law distinctions between licensees and invitees. In a two-pronged attack, the Firefighters urge this court to abolish the "antiquated" common law classification system or, in the alternative, reclassify firefighters as invitees. The Murat counters that, notwithstanding recent reform[6] to Indiana's classification system of land entrants, invitees remain a separate and distinct class and that Indiana law maintains, a separate and distinct degree of care owed to licensees.

At the outset, we note that the Firefighters have presented an able argument and have provided ample authority upon which to premise a change in the law. The Firefighters urge that Indiana "extricate [itself] from a semantical quagmire", quoting *Mariorenzi v. Joseph DiPonte, Inc.* (1975) 114 R.I. 294, 333 A.2d 127, 133, that has perpetuated the "antiquated common law system of classifying entrants to premises" to which Indiana tenaciously clings. Brief of Appellant at 29. In its place, they posit, Indiana should adopt a unitary standard of reasonable care under the circumstances. The Firefighters also cite authority for the proposition that firefighters should be classified as invitees and, therefore, be afforded the duty of reasonable care.

As eloquent or as persuasive as the argument may be, we feel compelled, despite its age, to apply the tenets of *Woodruff, supra.* In reviewing the line of cases that have relied upon *Woodruff*, we are reminded that the arguments presented here have apparently fallen upon deaf ears.[7] Be that as it may, it

---

5. According to the Firefighters, the entrapment test requires a showing that the defendant both created and controlled the instrumentality creating a trap. *Harper v. Kampschaefer* (1990) 4th Dist.Ind.App., 549 N.E.2d 1067, 1070, *trans. denied.* Here, the loft was specifically designed and used to house paper and linen products. Such a purpose seems wholly incongruous with creating and maintaining firetraps.

6. The Firefighters rely upon *Burrell v. Meads* (1991) Ind., 569 N.E.2d 637 in support of their invitation to abolish the invitee-licensee distinction. Although *Burrell* reclassified social guests as invitees, in its response to dissatisfaction over

the tests used to determine who is an invitee, a three-tiered classification system (invitee, licensee, and trespasser) remains intact.

7. For example, in *Pallikan, supra,* our First District rejected the fireman's invitation to ascribe "invitee" status to firemen based upon the authority of *Dini v. Naiditch* (1960) Ill., 20 Ill.2d 406, 170 N.E.2d 881. Further, after our Supreme Court reformulated the invitee classification in *Burrell, supra,* it denied transfer in *Kennedy v. Tri–City Health, supra,* a case that based the denial of recovery upon the viability of the Fireman's Rule and the policemen's status as *licensees.* It is also important to note that in *Kennedy,*

is not our prerogative to fashion new garments from what might well be thread-bare remnants of a rule from days gone by. In the instant case, we are bound to uphold the Fireman's Rule absent legislative directive to the contrary and in light of the Rule's continuing application by the courts of our state.

## IV. Alternatives to Premises Liability

■ The Firefighters also invite us to abandon premises liability as a basis for the Fireman's Rule in favor of (1) the assumption of risk or (2) public policy. Their position is supported, once again, with various rules employed by other jurisdictions. The Firefighters propose various tests and standards of care to determine the landowner's duty to public safety officers.

The assumption of risk approach, articulated in *Armstrong v. Mailand* (1979) Minn., 284 N.W.2d 343, 350, imposes a duty of reasonable care upon landowners "except to the extent firemen primarily assume the risk when entering upon the land.... [but firemen] do not assume, in a primary sense, risks that are hidden from or unanticipated by the firemen." Thus, the Firefighters in the instant case would not be precluded from recovery if they could prove that the collapse of the loft was "not the product of the fire but pre-existed the conflagration and, therefore, could be deemed a hidden or unanticipated risk." Brief of Appellant at 40 (quoting *Flowers v. Sting Security* (1985), 62 Md. App. 116, 488 A.2d 523, 537, *aff'd sub nom. Flowers v. Rock Creek Terrace Ltd.* (1987), 308 Md. 432, 520 A.2d 361).

Alternatively, the Firefighters note that in certain jurisdictions, firemen are simply not classified for purposes of premises liability. Rather, on the basis of public policy, firefighters are precluded from recovering for injuries sustained in the line of duty. *See,*

*e.g., Kreski v. Modern Wholesale Electric Supply Co.* (1987), 429 Mich. 347, 415 N.W.2d 178. The public policy rationale is based, in part, upon the "relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public." *Id.* 415 N.W.2d at 187. Accordingly, the availability of worker's compensation benefits "fairly spreads the cost of these injuries to the public as a whole rather than individual property owners." *Id.* 415 N.W.2d at 188.[8] Under such a public policy rationale, Firefighters would permit or bar recovery based upon the exercise of reasonable care under the circumstances.

As we have previously stated, *supra,* whether the foregoing analyses provide a more valid or more rational response to the issue before us is beyond our consideration. Neither are we at liberty to impose or to effectuate the judicial ruminations of foreign jurisdictions no matter how persuasive or well-intentioned they may be. At this juncture, the Fireman's Rule, and its theoretical underpinnings, remains the law in Indiana and must be applied in the instant case. Having determined that the Firefighters have failed to identify an issue of material fact and having rejected the Firefighters' attempt to displace the prevailing rule of law, we must conclude that the Murat was entitled to summary judgment as a matter of law.

The judgment of the trial court is affirmed.

RILEY, J., concurs.

KIRSCH, J., concurs and files separate opinion.

KIRSCH, Judge, concurring.

I concur with the majority in all respects. I write separately only to note that our deci-

---

*supra,* our Third District considered, but declined to follow, the lead of foreign jurisdictions abandoning the Fireman's Rule. Judge Garrard's admonition to "refrain from counting the jurisdictions accepting or rejecting the rule as a means of determining whether it will apply in this state or not" is well-taken. *Kennedy, supra,* 590 N.E.2d at 143. Finally, in *Heck v. Robey* (1994) 1st Dist.Ind.App., 630 N.E.2d 1361, this court continued to apply the Fireman's Rule to police as licensees.

8. Indiana courts have also recognized that the public policy rationale provides *additional* support, although it neither replaces nor detracts from, the Fireman's Rule as historically applied in Indiana. *See Fox v. Hawkins* (1992) 1st Dist. Ind.App., 594 N.E.2d 493, 497; *Kennedy, supra,* 590 N.E.2d at 144.

sion is mandated by the century-old holding in *Woodruff v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113. In *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, our supreme court took a significant step toward modernizing the law of premises liability in Indiana. The instant case presents the opportunity to take another such step.