**Daniel SAM, Appellant–Plaintiff,**

**v.**

**James WESLEY, Appellee–Defendant.**

**No. 64A03–9404–CV–163.**

Court of Appeals of Indiana,
Third District.

March 7, 1995.

## OPINION

GARRARD, Judge.

Daniel Sam, a building inspector for the town of Merrillville, appeals the trial court's grant of summary judgment to James Wesley, denying Sam recovery for personal injuries sustained while inspecting Wesley's property.

## FACTS

In February of 1987, a fire severely damaged Wesley's home. He contracted with Hixon Home Improvement in March of 1987 to repair the premises, and the repairs were completed in May of that same year.

Sam is the building inspector and plan reviewer for the Town of Merrillville. His duties include reviewing blue prints and performing building inspections to enforce compliance with the building codes.

On May 18, 1987, Sam arrived at Wesley's home to execute his final inspection of the premises. Hixon had called to schedule the inspection, and arrangements had been made through Sam's secretary to have Wesley present at the home to let Sam in. While at the home, Sam slipped and fell on a flight of wooden stairs, sustaining a back injury.

Sam filed suit against Wesley and Hixon on April 14, 1989.[1] Wesley's initial motion for summary judgment was denied, but, after filing a supplemental brief, the court granted Wesley's motion on the theory that Sam, as a building inspector, is a public safety officer and subject to the fireman's rule. Sam appeals this judgment.

## ISSUE AND DISCUSSION

The sole issue raised by Sam is whether or not a town building inspector falls within the fireman's rule.[2]

In reviewing a ruling on a motion for summary judgment, we apply the same standard as the trial court. *Valley Federal Sav. Bank v. Anderson* (1993), Ind.App., 612 N.E.2d 1099, 1101. The moving party must

Thom W. Kramer, Buoscio, Pera, Kramer & Nowak, Merrillville, for appellant.

Albert C. Hand, Nancy Townsend Beggs, Hand, Meunich & Wilk, Highland, for appellee.

---

1. Hixon was dismissed from this lawsuit prior to this appeal.

2. Sam apparently concedes that, if the fireman's rule applies, summary judgment would be appropriate as he has not alleged any conduct which would fall into one of the exceptions to the rule.

make a prima facie showing that (1) there is no issue as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Midwest Commerce Banking Co. v. Livings* (1993), Ind. App., 608 N.E.2d 1010, 1012. If the movant meets this initial burden, to avoid summary judgment the nonmoving party must demonstrate the existence of a genuine issue of material fact for trial. *Id.* Both parties must specifically designate to the trial court the evidentiary matter upon which they rely. *Id.* This court will affirm summary judgment on any legal theory which is consistent with the designated facts disclosed in the record. *Valley Federal Sav. Bank,* 612 N.E.2d at 1102.

■ The fireman's rule provides that public safety professionals, whose occupations by their nature expose them to particular risks, may not hold another individual negligent for creating the situation to which they respond in their official capacity. *Fox v. Hawkins* (1992), Ind.App., 594 N.E.2d 493, 495. The rule originated in the law of premises liability, when our supreme court held that firemen, acting within the scope of their duties, entered another's property under a license granted by law for the purpose of extinguishing a fire. *Woodruff v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113, 1116. As licensees, landowners owed fire fighters, and subsequently police officers, only the duty of abstaining from any positive wrongful act which could result in their injury. *Id.* 34 N.E. at 1117; *Fox,* 594 N.E.2d at 495.

■ In *Koehn v. Devereaux* (1986), Ind. App., 495 N.E.2d 211, the court applied the rule to off-premises cases as well, concluding that there was no logical reason for a distinction. The Koehn court reasoned that the fireman's rule was an exception to the rescue doctrine, which holds that "one who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury." *Id.* at 215. Without such a rule, the rescuer would be subject to the defense of incurred risk. Thus, the fireman's rule indicates that a duty does not exist for a professional rescuer, who

has chosen to incur risks. *Heck v. Robey* (1994), Ind.App., 630 N.E.2d 1361, 1366.

Finally, the rule has also been upheld for public policy reasons. In *Kennedy v. Tri-City Comprehensive Community Mental Health Center* (1992), Ind.App., 590 N.E.2d 140, trans. denied, we quoted approvingly from the policy concerns noted by the Michigan Supreme Court:

> The policy arguments for adopting a fireman's rule stem from the nature of the service provided by fire fighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect. It is beyond peradventure that the maintenance of organized society requires the presence and protection of fire fighters and police officers.
>
> . . . .
>
> The public hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations.
>
> . . . .
>
> The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, fire fighters and society which distinguishes safety officers from other [public] employees.

*Kennedy,* 590 N.E.2d at 143–44, quoting *Kreski v. Modern Wholesale Elec. Supply Co.* (1987), 429 Mich. 347, 415 N.W.2d 178, 186–87.

■ Most recently, the fireman's rule has been extended to include paramedics. *Heck,* 630 N.E.2d 1361. In making its decision, the court first observed that a paramedic's job is to provide emergency medical and rescue services to the public, for which compensation is ultimately the responsibility of the taxpayers. *Id.* at 1365. From this, the court concluded that a paramedic is a public safety professional and incurs the inherent risks of situations when acting in a professional capacity. *Id.* The court concluded that public policy also favored including paramedics within the fireman's rule:

> Here, we have the case of a public safety professional versus two tax-paying mem-

bers of the public. The defendants, in essence, hired Robey and paid him to confront emergencies and rescue individuals; and Robey has consciously and voluntarily chosen to be exposed to the reasonably foreseeable harm inherent in his work.

Also, Robey is already compensated for the hazards and inherent risks of the calling through pay, medical, disability, and pension schemes and worker's compensation.

*Id.* at 1366–67.

■ We do not believe that a building inspector is a professional public safety officer in the nature of a fire fighter, police officer or paramedic. Building inspectors do not receive special training from the State to confront emergency situations, as do the other safety professionals included in the fireman's rule.[3] Further, a building inspector's job does not expose one to particular, specific, emergency risks as do the jobs listed above. A building inspector is not called upon to rescue an individual caught in a building which is not up to code. Instead, an inspector is employed to confirm that constructors are complying with the building code. There is some risk inherent in performing these duties; however, "[m]any kinds of public employees confront danger inherent in their jobs.... If we did not distinguish fire fighters and police officers from other public employees, then no public employees would be able to recover for injuries sustained as a result of those dangers." *Lees v. Lobosco* (1993), 265 N.J.Super. 95, 625 A.2d 573, 576. In *Kennedy* we observed that "[t]he rule's scope and our application is narrow," and we reiterate that position in this case. *Kennedy,* 590 N.E.2d at 143.

Fire fighters, police officers and paramedics all face very particular types of risk, directly related to the task of confronting emergencies and rescuing individuals, which are not present in the job of a building inspector. *See Lees,* 625 A.2d at 575 (persons who assume duties to "respond to danger and emergency" and "who undertake on behalf of the community 'to confront crisis and allay dangers' are 'summoned in circumstances of emergency' with 'no reasonable expectation that the property has been made safe for [their] arrival.'") The *Kreski* court articulated the difference between "public safety professionals" and other employees:

> In sum, fire fighters and police officers are different [from] other employees whose occupations may peripherally involve hazards. Safety officers are employed, specially trained, and paid to confront dangerous situations for the protection of society. They enter their professions with the certain knowledge that their personal safety is at risk while on duty. Property owners and occupiers cannot reasonably predict visits by safety officers or control their activities while on the premises.
>
> . . . .
>
> Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk.

*Kreski,* 415 N.W.2d at 189.

This core distinction between the duties and expectations of police officers, fire fighters and paramedics, as compared to building inspectors, is also supported by an examination of the primary objective of the fireman's rule. The rule was designed to protect victims by encouraging them to seek emergency assistance without fear of subsequent tort liability.[4] This objective is applicable under

---

**3.** At least, Wesley does not present any evidence that the Town of Merrillville trained Sam for his position with the city.

**4.** The risks of permitting a victim to be liable to a public safety officer were further delineated by Judge Baker:

> Indeed, it would be a breach of the social contract for all of us to say to any one of us "fire and police protection are available only at your peril." In that event, the poor or underinsured, even though tax dollars go to pay for fire and police protection, might well hesitate to summon public safety officers for fear of being assessed damages. At the same time, public safety officers, fearful of exposure to uncompensated harm, might well spend their time protecting people of means.

*Fox,* 594 N.E.2d at 496.

either the premises liability or incurred risk theories underlying the rule. However, this goal is clearly not implicated under the situation of the building inspector, as an individual does not notify the inspector to seek emergency assistance but rather to receive certification that he or she is in compliance with the law.

■ We have previously indicated our desire to maintain a narrow scope and application of the fireman's rule. The substantial disparity between the duties of building inspectors and public safety professionals convinces us that to broaden the rule to include such employees would result in the rule being extended to virtually any employee whose job includes any type of risk, as opposed to employees who encounter particular risks as envisioned by the rule. We will not extend the rule in this manner.

■ Wesley contends that, even if the fireman's rule is not applicable to Sam, summary judgment is nonetheless appropriate on several different grounds.[5] Disputed issues of fact exist as to whether Wesley had control of the premises and whether Wesley or Hixon applied the clear finish on the stairs. These disputed issues of fact preclude summary judgment on issues I, III and IV. On issues V and VI, Wesley has failed to sustain his burden to show that he is entitled to judgment as a matter of law. Wesley failed

to designate to the trial court any evidence supporting the contention that he could have reasonably expected Sam to discover, realize and avoid the risk of a clear, slick finish on wooden stairs. Furthermore, no evidence has been presented that examining the finish on the stairs was to be a specific part of Sam's inspection.[6] Without such evidence, summary judgment on issues V and VI would be inappropriate.

Judgment reversed.

SULLIVAN, J., concurs and files separate opinion.

HOFFMAN, J., dissents and files separate opinion.

SULLIVAN, Judge, concurring.

I concur. I do so in the knowledge that today's decision constitutes a conscious narrow interpretation of the Fireman's Rule so as to limit its scope.[7]

In *Thompson v. Murat Shrine Club, Inc.* (1994) 2d Dist.Ind.App., 639 N.E.2d 1039, 1041, this court quoting from two prior Third District cases stated that "the Fireman's Rule encapsulates the principle that public safety officers 'whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional

---

5. Wesley raises the following issues:

I. Whether Wesley can be held liable for injuries on property of which he had no possession or control.

II. Whether a municipal building inspector is a public officer who was a mere licensee on defendant's property under the "fireman's rule."

III. Whether a landowner can be held liable to an invitee where there is no evidence or reasonable inference that the landowner either knew or by the exercise of reasonable care would discover the condition that caused the injury.

IV. Whether a landowner can be held liable to an invitee where there is no evidence or reasonable inference that the landowner should have realized that the condition of the property involved an unreasonable risk.

V. Whether a landowner can reasonably expect, as a matter of law, that a building inspector will discover dangerous conditions in properties they are called upon to inspect.

VI. Whether building inspectors assume the risk of dangerous conditions on the property they inspect.

6. In his statement of facts, Wesley indicates that Sam went to the home to inspect "the carpentry and sheet rock work." (Brief of Appellee at 2).

7. The summary judgment was granted solely upon the trial court's conclusion that the Fireman's Rule precluded establishment of any liability on the part of Wesley for negligent conduct. Even if the record were to reflect the absence, as a matter of law, of any negligence upon Wesley's part, such contention was not made in Wesley's Motion for Summary Judgment, nor were materials designated which would demonstrate the absence of an issue of fact as to Wesley's negligence. Wesley did contend that he was not liable as a matter of law, because he was not in control of the property at the time of injury. This contention does not equate with an assertion that as a matter of law, he was not negligent. Accordingly, there is not a viable alternative basis for affirming the summary judgment.

capacity'" (footnote omitted). As noted by the majority, the rule was similarly phrased in *Fox v. Hawkins* (1992) 1st Dist.Ind.App., 594 N.E.2d 493.

No longer, however, does the rule have general application to all public safety officials whose duties expose them to particular risks. Our decision today limits the application of the Rule to such officials when they are actually engaged in emergency rescue activities in an effort to protect life, health or property.

The Rule does not hereafter apply, if it ever did apply, to a police officer giving safety lectures to children at an elementary school; nor to a nighttime security officer engaged in normal routine surveillance of an office building; nor to a firefighter collecting Christmas toys for needy children; and perhaps not even to an arson investigator inspecting the site of a fire to determine the cause.

Some activities will appear to fall very close to the line which delineates whether or not the Rule is applicable. I would venture the view that the arson investigator in my example would fall into that category. So also, perhaps, a building inspector if he were inspecting a building recently damaged by fire in order to determine whether safety factors dictate that the occupants must evacuate the building. Here, Sam's activities on the occasion in question were not of an emergency nature involving the preservation of life, health or property. In any event, in many, if not most, Fireman's Rule situations, the courts will have to examine them upon a case by case, very fact-sensitive, basis.

HOFFMAN, Judge, dissenting.

I respectfully dissent. As noted by the majority, an inspector is employed to confirm that contractors are complying with building codes and some risk is inherent in performing inspection duties. The very nature of the position requires inspectors to enter premises in various stages of completion and ferret out dangerous, i.e. non-complying, construction techniques or materials. The inspector is employed by a governmental entity to protect the public.

To say that fire fighters and police officers must be distinguished from all other public employees otherwise no public employee could recover for injuries sustained due to danger, ignores the obvious. The terms within the definition of the fireman's rule necessarily narrow the group of public employees to which it can be applied. Here, the inspector is a public safety professional whose occupation by its nature exposes him to particular risks. His injuries were sustained while performing his inherently dangerous duties for the public. As with fire fighters, police officers and paramedics; building inspectors should have "no reasonable expectation that the property has been made safe for [their] arrival." *See* Majority op. p. 385. In fact it is quite the opposite, the building inspector is employed to determine possible safety risks found at the property while it is in various stages of completion.

Further, it is of no moment that the inspector may have been called to the home to inspect something different than the portion of the work upon which he was injured. As repeatedly noted above, inspectors are exposed to construction sites during various stages of completion. Requesting an inspection of one portion of the work does not warrant that all other components are free from danger. Exposure to incomplete and dangerous construction work is not a hidden danger to building inspectors. I would vote to affirm.