Thomas Matthew BURRELL, Appellant (Plaintiff Below),

v.

Kenneth A. MEADS, Appellee (Defendant Below).

No. 92S03-9104-CV-287.

Supreme Court of Indiana.

April 10, 1991.

Rehearing Denied June 3, 1991.

James R. Grossman, Trina Glusenkamp Gould, Grossman & Glusenkamp, Fort Wayne, for appellant.

Kathryn J. Roudebush, Roby & Hood, Fort Wayne, for the Indiana Trial Lawyers Ass'n as amicus curiae in support of appellant.

Thomas W. Yoder, Robert T. Keen, Jr., Miller, Carson & Boxberger, Fort Wayne, for appellee.

SHEPARD, Chief Justice.

This appeal raises the question of what duty an Indiana landowner or occupier owes to his social guests to protect them from physical harm while they are on his premises. We hold that the duty is to exercise reasonable care.

In this case, Thomas Burrell, the guest, and Kenneth Meads, the landowner, had been friends for years. The two men had helped each other perform a variety of tasks, and neither had ever compensated the other for his services.

On April 9, 1986, Burrell worked on his car in Meads' garage. As Burrell was preparing to leave, Meads told him that he intended to install a drop ceiling in the garage later that day. Burrell agreed to return and help with the installation after running some errands. He returned that evening and began to install the ceiling with Meads and two other friends.

After part of the ceiling had been installed, Meads determined that it was necessary to remove some items which were stored on top of the garage rafters, including vinyl siding, pieces of plywood, a wooden sign, and a large map mounted on fiberboard with a wooden frame. According to his deposition, Meads said, "Someone has to go up there and hand that stuff down." Deposition of Kenneth A. Meads at 55. Burrell climbed up, squatted on a rafter, and began

to hand the things down. After removing almost all of the items, Burrell moved off the rafter and knelt on the large map. Moments later, he fell through the map (which he had assumed was mounted on plywood) and crashed to the floor, breaking his pelvis in three places.

Burrell sued Meads for negligence. The trial court granted summary judgment for Meads. On appeal, the Court of Appeals concluded that Burrell, a social guest, was a licensee at the time of his injury and that Meads owed him only the duty to refrain from willfully or wantonly injuring him or acting in a way to increase his peril. Because Burrell did not claim that Meads' conduct was willful or wanton, the Court of Appeals affirmed the grant of summary judgment. The Court of Appeals suggested that alteration of our premises liability law might be appropriate but that any change should come from the Supreme Court. *Burrell v. Meads* (1989), Ind.App., 540 N.E.2d 115. The Court of Appeals was certainly correct in positing that it is proper for common law judges to re-examine existing rules:

> That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule.

*Dwy v. Connecticut Co.*, 89 Conn. 74, 99, 92 A. 883, 891 (1915) (Wheeler, J., concurring in result). Burrell asks this Court to treat social guests as invitees rather than licensees and to impose upon landowners and occupiers a duty of reasonable care for the protection of their guests' safety. We grant transfer.

### I. Status and Duties: Current Indiana Premises Liability Law

To address Burrell's arguments in context, we first examine the evolution and the current condition of premises liability law. During the last two centuries, English and American common law courts have categorized a person entering the land of another as an invitee, a licensee, or a trespasser. Marsh, *The History and Comparative Law of Invitees, Licensees, and Trespassers*, 69 Law.Q.Rev. 182 (1953). Following this scheme, Indiana courts have long said that the entrant's status on the land determines the duty that the landowner (or occupier) owes to him. *See, e.g., Cleveland, C., C. & St. L. Ry. v. Means* (1914), 59 Ind. App. 383, 391–93, 104 N.E. 785, 788, *overruled on other grounds, Fort Wayne Nat'l Bank v. Doctor* (1971), 149 Ind.App. 365, 374, 272 N.E.2d 876, 882; *Barbre v. Indianapolis Water Co.* (1980), Ind.App., 400 N.E.2d 1142, 1145.

■ Our case law also outlines the duties landowners owe to each of the three status groups. First, a landowner owes a trespasser the duty to refrain from willfully or wantonly (intentionally) injuring him after discovering his presence. *See Standard Oil Co. of Indiana v. Scoville* (1961), 132 Ind.App. 521, 524, 175 N.E.2d 711, 713.

■ Second, an Indiana landowner owes a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. *Barbre*, 400 N.E.2d at 1146. The landowner also has a duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. *Wright v. International Harvester Co.* (1988), Ind.App., 528 N.E.2d 837, 839.[1]

■ Third, a landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises. *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821. The best definition of this duty comes from the Restatement (Second) of Torts § 343 (1965):

> A possessor of land is subject to liability for physical harm caused to his invitees

---

**1.** This duty encompasses the duty not to entrap licensees mentioned in *Martin v. Shea* (1984),

Ind., 463 N.E.2d 1092, 1094.

by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

This Court has used the definition in § 343 in resolving premises liability cases. *Hammond*, 262 Ind. at 85, 311 N.E.2d at 824; *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 370.

While the duty owed to visitors in each of these categories has been a matter of settled law, Indiana appellate courts have had a more difficult time determining whether a trial court or jury properly defined the status of a given plaintiff. We have tended to rely on a few maxims for this task. Licensees and trespassers are those who enter premises for their own convenience, curiosity, or entertainment. *See Gaboury v. Ireland Rd. Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1314 (both groups come for their own convenience); *Barbre*, 400 N.E.2d at 1146 (licensees come for their own convenience, curiosity or entertainment). Both groups take the premises as they find them. *Gaboury*, 446 N.E.2d at 1314. Unlike trespassers, however, licensees have a license to use the land. In other words, licensees are privileged to enter or remain on the land by virtue of the owner's or occupier's permission or sufferance. *Scoville*, 132 Ind.App. at 525, 175 N.E.2d at 713; *see also* Restatement (Second) of Torts § 330 comment c (possessor's consent).

A brief foray into history makes it apparent that the distinction between licensees and invitees has become increasingly difficult to draw under current Indiana law. In the 1800's and very early 1900's, Indiana courts followed an "invitation test"[2] to separate invitees from licensees:

When a person has a license to go upon the grounds or the enclosure of another, he takes the premises as he finds them, and accepts whatever perils he incurs in the use of such license. But when the owner or occupant, by enticement, allurement, or inducement, whether express or implied, causes another to come upon his lands, he then assumes the obligation of providing for the safety and protection of the person so coming, and for any breach of duty in that respect such owner or occupant becomes liable for any injury which may result to the person so caused to come onto his lands. The enticement, allurement, or inducement, as the case may be, must be the equivalent of an express or implied invitation. Mere acquiescence in the use of one's land by another is not sufficient. Such an implied invitation may be inferred from some act or line of conduct, or from some designation or dedication.

*Indiana, Bloomington & W. Ry. v. Barnhart* (1888), 115 Ind. 399, 408, 16 N.E. 121, 125, *quoted in Baltimore & O. S.W. R.R. v. Slaughter* (1906), 167 Ind. 330, 335–36, 79 N.E. 186, 188. It is clear from this passage that the focus of the invitation test was on the invitation itself. The theory supporting the invitation test has been that if a landowner induces another person to enter his land by arrangement of the land or other conduct amounting to an express or reasonably implied invitation, then the landowner leads the entrant to believe that the land has been prepared for his safety.[3] Consequently, the landowner must be held to a reasonable duty of care.

Around 1914, Indiana courts moved away from the invitation test toward an "economic benefit test"[4] in determining who was an invitee:

A licensee by invitation [invitee] is a person who goes upon the lands of another with the express or implied invitation of

---

**2.** 5 F. Harper, F. James, and O. Gray, *The Law of Torts* § 27.12 (2d ed. 1986) [hereinafter *Torts*].

**3.** *Torts, supra* note 2, at 220–21.

**4.** *Torts, supra* note 2, at 219.

the owner or occupant, either to transact business with such owner, or occupant, or to do some act which is of advantage to him (the owner or occupant) or of mutual advantage to both licensee and the owner or occupant of the premises. An invitation is implied from such a mutual interest.

*Cleveland, C., C. & St. L. Ry. v. Means,* 59 Ind.App. at 394, 104 N.E. at 789. The theory underlying the economic benefit test has been described in the following fashion:

> The economic benefit theory proceeds on the assumption that affirmative obligations are imposed on people only in return for some consideration or benefit. Any obligation to discover latent dangerous conditions of the premises is regarded as an affirmative one, and the consideration for imposing it is sought in the economic advantage—actual or potential—of the plaintiff's visit to the occupier's own interest.[5]

From 1914 to the late 1970's, Indiana courts generally followed the economic benefit test. *See, e.g., Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821; *Standard Oil Co. of Indiana v. Scoville* (1961), 132 Ind.App. 521, 175 N.E.2d 711.

In 1978, the third district of the Indiana Court of Appeals began a new line of decisions demonstrating dissatisfaction with the economic benefit test. The first of these decisions was *Mullins v. Easton* (1978), 176 Ind.App. 590, 376 N.E.2d 1178. Mullins, an unpaid helper of a paid repairman, was injured while helping to carry a Roto Rooter out of the Eastons' basement. Mullins and his wife sued the Eastons. The trial court granted summary judgment for the Eastons after finding that Mullins was a licensee because he was not paid for his services. The Court of Appeals' opinion mingled ideas of invitation with ideas of economic benefit and concluded that Mullins was an invitee. What had been two different concepts seemed to become one:

> When the visitor has a purpose that is related to the occupant's pecuniary interest or advantage, an invitation to use the premises is inferred and the visitor's status is changed with a greater duty imposed. Such is often related to the regular ongoing business establishment in which liability is ultimately born by the enterprise itself. A corollary rule considers one an invitee if the possessor encourages another to enter to further his own purpose such that there arises the implicit assertion that reasonable care has been exercised to make the place safe for the one who came for that purpose.

*Id.* at 594–95, 376 N.E.2d at 1181 (citations omitted).

This use of the economic benefit test stretched the test beyond the reach of its theoretical underpinnings. Under *Mullins,* a traveling salesman who is injured after entering a landowner's property but before having an opportunity to do business with the landowner can make a valid argument that he entered the land with a purpose related to the landowner's pecuniary interest or advantage simply because he hoped to make a deal. The landowner, who gains no consideration or benefit from the salesman's presence, still gains the affirmative obligation to exercise a reasonable duty of care for the salesman's safety—exactly the opposite of the outcome that should be reached under the economic benefit theory.

The dilution of the economic benefit test in *Mullins* cleared the way for the third district of the Court of Appeals to seek a new test for invitee status in *Fleischer v. Hebrew Orthodox Congregation* (1987), Ind.App., 504 N.E.2d 320, *trans. denied,* (1989), Ind., 539 N.E.2d 1. Mrs. Fleischer was injured while attending religious services at a synagogue. The Court of Appeals reversed a grant of summary judgment for the Congregation, holding that Mrs. Fleischer was an invitee. It used one of the two definitions of invitee found in Restatement (Second) of Torts § 332: "(2) A public invitee is a person who is invited to enter or remain on land as a member of

---

**5.** *Torts, supra* note 2, at 219–20. This rationale seems to have much to do with concepts of contract.

the public for a purpose for which the land is held open to the public." In adopting the Restatement definition, the court reasoned:

> More recent cases have broadened the business invitee test itself to require merely that the visitor's purpose be *related to* the owner or occupant's pecuniary interest or advantage. This court's further willingness to look at the invitation itself, and the implication of reasonable care that arises from it, indicates a drifting away from pecuniary benefit or interest as the sole test.

*Fleischer*, 504 N.E.2d at 323 (citations omitted).

Moving beyond *Mullins, Fleischer* signaled overt dissatisfaction with the economic benefit test.[6] The *Fleischer* court headed toward a more reasonable remedy for the dissatisfaction, clear movement away from an economic benefit test back to an invitation test.

We believe that examination of the invitation itself must be the first step of any inquiry into invitee status. Much of the discomfort in our recent premises liability decisions reflects a sense late in this century that the economic benefit test promotes injustice when applied to social guest cases. As Judge Cardozo observed, such dysfunction is the foundation for the evolution of common law rules:

> Few rules in our time are so well established that they may not be called upon any day to justify their existence as a means adapted to an end. If they do not function, they are diseased. If they are diseased, they must not propagate their kind. Sometimes they are cut out and extirpated altogether. Sometimes they are left with the shadow of continued life, but sterilized, truncated, impotent for harm.
>
> We get a striking illustration of the force of logical consistency, then of its gradual breaking down before the demands of practical convenience in isolated or exceptional instances, and finally of

the generative force of the exceptions as a new stock....

B. Cardozo, *The Nature of the Judicial Process* 98–99 (1921).

■ When a test has become riddled with exceptions, "[t]he law will have cause for gratitude to the deliverer who will strike the fatal blow." *Id.* at 155–56. Today, we complete the transition and adopt the invitation test as the analytical basis for deciding who is an invitee. Adoption of the invitation test leads us to declare that at least those persons described in the Restatement (Second) of Torts § 332 qualify as invitees:

> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

We also note the following comments from Professor Keeton explaining subsection (3) of § 332:

> It is in connection with invitations to enter private land, not held open to the public, that possible pecuniary benefit has its greatest importance—*but only as justifying an expectation that the place has been prepared and made safe for the visit.*

*Prosser and Keeton on the Law of Torts* § 61, at 424 (W. Keeton 5th ed. 1984) (citations omitted) (emphasis added).

## II. The Social Guest

■ Having examined the three categories of visitors and the duties Indiana landowners owe to each, we turn to the question whether social guests like Burrell should be added as a third type of invitee

---

6. A number of subsequent Indiana cases also strained in dissatisfaction under the economic benefit test. *City of Bloomington v. Kuruzovich* (1987), Ind.App., 517 N.E.2d 408; *see also J.C. Penney Co. v. Wesolek*, Ind.App., 461 N.E.2d 1149, *modified,* (1984), Ind.App., 465 N.E.2d 763 (following the pecuniary interest test articulated in *Mullins*); *Joseph v. Calvary Baptist Church* (1986), Ind.App., 500 N.E.2d 250, *vacated,* (1988), Ind., 522 N.E.2d 371 (same).

(in addition to the two categories recognized under § 332).

The anomalous position of the social visitor was well described when Professor Fleming James called the guest "an invitee who is not an invitee." [7] Like most jurisdictions, Indiana has traditionally classified the social guest as a licensee, even when he is expressly invited to come onto his host's property. *Fort Wayne Nat'l Bank v. Doctor* (1971), 149 Ind.App. 365, 272 N.E.2d 876.[8] Performing minor tasks for the host's benefit does not make the social guest an invitee. *Id.* at 376, 272 N.E.2d at 883.

Courts have justified the exclusion of social guests from the invitee category on the basis that guests come only to receive their hosts' hospitality and therefore have no right to expect that the hosts will take more precautions for their safety than the hosts would ordinarily take for the safety of members of their own households. *See Doctor,* 149 Ind.App. at 371, 272 N.E.2d at 880; *Lenz v. Mehrens,* 149 Mont. 394, 399, 427 P.2d 297, 299 (1967); *see generally Tort Liability, supra* note 7, at 611–12 (discussing classification of social guest). This justification simply does not comport with modern social practices. As one commentator has noted:

> It is customary for possessors to prepare as carefully, if not more carefully, for social guests as for business guests; furthermore, the social guest has reasons to believe that his host will either make conditions on the premises safe or at least warn of hidden dangers. In this century there is no reason for the courts to take the position that a social guest should not sue his host.

McCleary, *The Liability of a Possessor of Land in Missouri to Persons Injured While on the Land,* 1 Mo.L.Rev. 45, 58 (1936).

As we see it, the reasons for the Restatement's use of an invitation-based test support requiring landowners to exercise reasonable care for the protection of their invited social guests. If a landowner induces a social guest to enter his land by express or reasonably implied invitation, then the landowner leads that guest, like any other entrant, to believe that the land has been prepared for his safety. Like its predecessor, the Restatement (Second) of Torts § 330 continues to classify social guests as licensees. We think this classification reflects the stated objective of the American Law Institute in creating the Restatement, "to present an orderly statement of the general common law of the United States." Restatement of Torts viii (1934). Even by the time the Institute revised its work on torts in 1965, the authors noted "an undercurrent of dissent, based upon the contention that it is not in accord with modern social custom and understanding when a guest is invited." Restatement (Second) of Torts § 330 comment h(3).

Mr. Burrell and the visitors in the three other cases we decide today were all individuals known to the landowner who came to the premises upon actual invitation or arguably upon standing invitation. We conclude that a landowner should exercise reasonable care for the safety of such guests.

In sum, we hold that social guests are invitees. Because social guests are invitees, they are entitled to a duty of reasonable care from landowners as that duty is defined in Restatement (Second) of Torts § 343, quoted above.

### III. Conclusion

█ Finally, we apply the law to this case. Burrell returned to Meads' land on the evening of April 9, 1986, pursuant to a reasonably implied invitation, and he had every cause to believe that Meads' property had been prepared for his safety. As a result, Burrell was Meads' invitee, and

---

7. James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees,* 63 Yale L.J. 605, 611 (1954) (citing Prosser, *Business Visitors and Invitees,* 26 Minn.L.Rev. 573, 578, 603–05 (1942)) [hereinafter *Tort Liability* ].

8. *But see Martin v. Shea* (1984), Ind., 463 N.E.2d 1092, 1096 (DeBruler, J., dissenting, arguing that a social guest is entitled to expect his host will exercise reasonable care).

Meads owed him a duty of reasonable care as defined in Restatement (Second) of Torts § 343.

We vacate the Court of Appeals' opinion. The trial court's grant of summary judgment for Meads is reversed, and the case is remanded for a trial on the merits.

DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, Justice, dissenting.[1]

I respectfully dissent from the majority opinion. The opinion reflects extended and careful research and gives an accurate portrayal of the existing law in Indiana and other jurisdictions on this subject. However, I cannot join the majority in its conclusion that a century of case-made law now should be overturned and social guests treated as invitees.

Our judicial system is grossly overburdened today with a litigious society in which citizens appear to be playing the judicial system as though it were a lottery. Today's decision will accelerate this situation. Under this decision, any person who entertains social guests on his premises can certainly not afford to do so unless he carries a large amount of insurance to protect him in such a situation. Even girded with generous insurance coverage, he must be prepared to endure prolonged litigation which has a great possibility to ensue.

I would leave the law as it is and deny transfer in this case.

---

1. This dissent was written in response to *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637 but is equally applicable to each of the following cases: *LeLoup v. LeLoup* (1991), Ind., 569 N.E.2d 648; *Risk v. Schilling* (1991), Ind., 569 N.E.2d 646; and *Parks v. Parks* (1991), Ind., 569 N.E.2d 644.