## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 22 2015, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| David A. Wilson | Richard R. Skiles |
| Walter J. Alvarez, P.C. | Skiles Detrude |
| Crown Point, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cindy Brothers, As Personal Representative of the Estate of Kristopher Stately, Deceased, Alicia Arnold and Tiffany Arnold, | April 22, 2015 |
| | Court of Appeals Case No. 37A03-1410-CT-347 |
| *Appellants-Plaintiffs,* | Appeal from the Jasper Circuit Court. |
| v. | The Honorable John D. Potter, Judge. |
| Lake Holiday Enterprises, Inc., | Cause Nos. 37C01-1109-CT-757, 37C01-1308-CT-583 |
| *Appellee-Defendant.* | |

**Barteau, Senior Judge**

## Statement of the Case

[1] Cindy Brothers ("Brothers"), as personal representative of the Estate of

Kristopher Stately ("Stately") (collectively, "the Estate"), Alicia Arnold

("Alicia"), and Tiffany Arnold ("Tiffany"), appeal from the trial court's order granting summary judgment in favor of Lake Holiday Enterprises, Inc. ("Lake Holiday"), in consolidated actions brought by them against Lake Holiday. We reverse and remand.

## Issues[1]

The Estate, Alicia, and Tiffany raise the following issues for our review:

   I.    Whether the Indiana Recreational Use Statute applies to the facts of this case.

   II.   Whether a landowner's own negligence removes the case from the application of the Indiana Recreational Use Statute.

   III.  Whether there is a genuine issue of material fact about Stately's status on Lake Holiday's premises.

Lake Holiday presents the following cross-appeal issue:

   IV.   Whether Brothers is a statutory beneficiary of the wrongful death claim.

## Facts and Procedural History

The materials designated for summary judgment establish that on August 8, 2011, twenty-three-year-old Stately drowned in a lake located on property known as Lake Holiday Campground, property at the time operated by Lake

---

[1] The Estate, Alicia, and Tiffany also present an argument about the appropriate duty of care owed to a public invitee or licensee. Since the appropriate analysis of the duty of care hinges on the status of the decedent, we do not address that issue here.

Holiday. Cindy Brothers, Stately's mother, as personal representative of his estate, filed a complaint alleging wrongful death against Lake Holiday. Stately's sisters, Alicia and Tiffany, filed a separate complaint against Lake Holiday arising from the drowning, alleging negligence and seeking damages for mental anguish and emotional distress from witnessing Stately's death. Ultimately, the two causes of action were consolidated.

[5] James Rose was the president of Lake Holiday Campground ("LHC") at the relevant time period. In his deposition, which was designated to the trial court for purposes of summary judgment, he stated that "[t]he campground is private property consisting of 674 lots available for purchase or lease as well as common areas, which include the subject lake." Appellants' Appendix p. 34. He further stated that "[t]he amenities at the campground are not open to the general public for free." *Id.* The campground, including the lake, is only available to lot owners and paying guests. *Id.*

[6] He further stated that there is a registration desk, or kiosk, located at the entrance to the property. *Id.* The lake also has a water slide with an attendant stationed there, who is not a life guard. *Id.* If a guest wishes to use the water slide, the guest must go to the convenience store, or gift shop, to pay an additional fee and receive a hand stamp. *Id.* Guests are only allowed to use the water slide upon showing the appropriate hand stamp to the water slide attendant. *Id.* at 35.

[7]    Stately, his brothers, Richard and Colby, and their sister, Amber Mileski, went to LHC to swim. They did not own or rent property at the campground. However, Amber had been to the campground numerous times because her friend, Hailey Ketchum, lived there. On August 8, 2011, Amber's name was on the guest list, because Hailey's mother, Vicki, an owner of a lot there, had placed her name on the guest list. Stately, Richard, and Colby's names were not on the guest list.

[8]    When Amber, Stately, Richard, and Colby arrived at the registration building, or kiosk, they found it unmanned. In his affidavit, Rose stated that the registration desk is manned twenty-four hours a day, with exceptions for bathroom breaks for the attendants. *Id.* at 34. After waiting for some time without encountering an attendant, the group proceeded onto the property. Although there is conflicting testimony about whether the group first went to the water slide or the gift shop, Amber paid the fee at the gift shop for the group to proceed to use the water slide, and they each received hand stamps.

[9]    Near the water slide area on the lake there is a man-made beach area. *Id.* at 35. The group used the water slide and then went to the beach area, at the southwest corner of the lake. Once there, the group decided to swim across the lake. After Richard and Amber crossed the lake, they noticed that Colby and Stately remained in the lake approximately thirty yards away going up and down in the water. Stately called out for help after becoming entangled in some vegetation in the lake. Despite efforts by Colby and Richard to assist Stately, he drowned in the lake.

Stately's relatives arrived after he had been underwater for what Richard described as "an hour, hour and a half." *Id.* at 61-62. Prior to the extrication of Stately's body from the lake, Tiffany and Alicia, Stately's sisters, arrived at the lake. After Tiffany arrived, she observed divers bringing Stately's body out of the lake in a body bag. She also observed that there was a "bunch of kelp" around Stately's feet. *Id.* at 204. After Amber arrived, she stood near the lake, and after waiting approximately twenty minutes, observed the divers bring Stately's body out of the water. Her boyfriend turned her around, presumably in an effort to prevent her from seeing Stately's body. Alicia observed responding medical personnel unsuccessfully attempt to revive Stately. *Id.* at 213.

Lake Holiday filed a motion for summary judgment, designation of evidence, and supporting brief on April 14, 2014. The trial court granted Lake Holiday's motion on July 23, 2014. Lake Holiday filed a motion to correct error and the plaintiffs were allowed to join Lake Holiday's motion. Lake Holiday's motion sought to have the trial court issue an order reflecting that the causes of action had been consolidated and that the trial court's order granting summary judgment in favor of Lake Holiday was a final, appealable order. The trial court entered an order on September 4, 2014, declaring its order granting summary judgment in favor of Lake Holiday a final and appealable judgment. The trial court issued another order on September 8, 2014, granting the motion to correct error, granting the plaintiffs' request to join in that motion, and stating that the trial court's order granting full summary judgment to Lake

Holiday was a final and appealable judgment. The Estate, Alicia, and Tiffany now appeal. Additional facts will be set forth as necessary.

# Discussion and Decision

## Standard of Review

The Estate, Alicia, and Tiffany appeal from the trial court's order granting summary judgment in favor of Lake Holiday. The appropriate standard of appellate review has been set forth by the Supreme Court as follows:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences."

> The initial burden is on the summary-judgment movant to "demonstrate[ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court."

> . . . .

> Even though Indiana Trial Rule 56 is nearly identical to Federal Rule of Civil Procedure 56, we have long recognized that

"Indiana's summary judgment procedure . . . diverges from federal summary judgment practice." In particular, while federal practice permits the moving party to merely show that the party carrying the burden of proof lacks evidence on a necessary element, we impose a more onerous burden: to affirmatively "negate an opponent's claim." Our choice to heighten the summary judgment burden has been criticized because it may let summary judgment be precluded by as little as a non-movant's "mere designation of a self-serving affidavit."

That observation is accurate, but using it as the basis for criticism overlooks the policy behind that heightened standard. Summary judgment "is a desirable tool to allow the trial court to dispose of cases where only legal issues exist." But it is also a "blunt . . . instrument," by which "the non-prevailing party is prevented from having his day in court[ ]". We have therefore cautioned that summary judgment "is not a summary trial,"; and the Court of Appeals has often rightly observed that it "is not appropriate merely because the non-movant appears unlikely to prevail at trial." In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

*Hughley v. State*, 15 N.E.3d 1000, 1003-04 (Ind. 2014) (citations omitted).

[13] "On appeal, a trial court's grant of summary judgment is 'clothed with a presumption of validity.'" *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993). Thus, the Estate, Alicia, and Tiffany bear the burden of convincing us that the trial court erred in its determination that there were no genuine issues of material fact and that Lake Holiday was entitled to judgment as a matter of law.

# I. Indiana Recreational Use Statute

Lake Holiday claims that it is immune from suit under the Indiana Recreational Use Statute. The Indiana Recreational Use Statute ("the IRUS") is codified at Indiana Code section 14-22-10-2 (1998) and provides as follows:

> (a) As used in this section and section 2.5 of this chapter, "governmental entity" means any of the following:
>
> (1) The government of the United States of America.
>
> (2) The state of Indiana.
>
> (3) A county.
>
> (4) A city.
>
> (5) A town.
>
> (6) A township.
>
> (7) The following, if created by the Constitution of the United States, the Constitution of the State of Indiana, a statute, an ordinance, a rule, or an order:
>
> (A) An agency.
>
> (B) A board.
>
> (C) A commission.
>
> (D) A committee.
>
> (E) A council.
>
> (F) A department.
>
> (G) A district.
>
> (H) A public body corporate and politic.
>
> (b) As used in this section and section 2.5 of this chapter, "monetary consideration" means a fee or other charge for permission to go upon a tract of land. The term does not include:
>
> (1) the gratuitous sharing of game, fish, or other products of the recreational use of the land;

(2) services rendered for the purpose of wildlife management; or

(3) contributions in kind made for the purpose of wildlife management.

(c) As used in this section and section 2.5 of this chapter, "owner" means a governmental entity or another person that:

(1) has a fee interest in;

(2) is a tenant, a lessee, or an occupant of; or

(3) is in control of;

a tract of land.

*(d) A person who goes upon or through the premises, including caves, of another:*

*(1) with or without permission; and*

*(2) either:*

*(A) without the payment of monetary consideration; or*

*(B) with the payment of monetary consideration directly or indirectly on the person's behalf by an agency of the state or federal government;*

*for the purpose of swimming, camping, hiking, sightseeing, or any other purpose (other than the purposes described in section 2.5 of this chapter) does not have an assurance that the premises are safe for the purpose.*

(e) The owner of the premises does not:

(1) assume responsibility; or

(2) incur liability;

for an injury to a person or property caused by an act or failure to act of other persons using the premises.

(f) This section does not affect the following:

(1) Existing Indiana case law on the liability of owners or possessors of premises with respect to the following:

(A) Business invitees in commercial establishments.

(B) Invited guests.

(2) The attractive nuisance doctrine.

(g) This section does not excuse the owner or occupant of premises from liability for injury to a person or property caused by a malicious or an illegal act of the owner or occupant.

(Emphasis added).

[15] Lake Holiday argues that the IRUS applies to the property and bars recovery in this action. However, "[t]he purpose of the IRUS is to encourage landowners to open their property to the public for recreational purposes free of charge." *Cunningham v. Bakker Produce, Inc.*, 712 N.E.2d 1002, 1005 (Ind. Ct. App. 1999), *trans. denied.* "[B]y denying certain persons legal recourse for personal injury or property damage, [the] IRUS is in derogation of common law and must accordingly be strictly construed against limiting a claimant's right to bring suit." *Drake by Drake v. Mitchell Comty. Schs.*, 649 N.E.2d 1027, 1029 (Ind. 1995). "Absent express declaration or unmistakable implication, statutes will not be interpreted as changing the common law." *Id.* at 1029-30.

[16] Here, LHC was private property for which a fee was paid by non-owners and non-renters to enter the premises. An additional fee was paid by those wanting to use the water slide, and their hands were marked with a stamp to indicate payment of the additional fee. Stately, through his sister, paid a fee to use the water slide and swam in the lake. Therefore, it is apparent that the IRUS does not apply to this case. Since the trial court did not specifically hold as much as a matter of law in granting summary judgment in favor of Lake Holiday, there is no reversible error. However, the trial court's judgment is not supported by the argument that the IRUS applies.

# II. Landowner's Negligence and the IRUS

[17]  The Estate also argues that the IRUS does not create immunity from liability for Lake Holiday's acts or failure to act. We have already concluded that the IRUS does not apply to the facts alleged in the complaint because a fee was paid to enter Lake Holiday's private property. Even so, we briefly address the issue here.

[18]  Indiana Code section 14-22-10-2(e) provides that under the IRUS an owner of the premises at issue neither assumes responsibility, nor incurs liability for an injury to a person or property, caused by an act or failure to act of other persons using the premises. In *Drake*, the Supreme Court noted that "by denying certain persons legal recourse for personal injury or property damage, [the] IRUS is in derogation of common law and must accordingly be strictly construed against limiting a claimant's right to bring suit." 649 N.E.2d at 1029. "Absent express declaration or unmistakable implication, statutes will not be interpreted as changing the common law." *Id.* at 1029-30. Utilizing those principles of statutory construction, the Supreme Court emphasized that when the IRUS applies to the specific circumstances of the case and the general allegations against the premises owner seek to impose liability for acts or the failure to act of others, that section creates immunity to the premises owner for the acts or failure to act of those others. However, the IRUS "does not create an immunity as to the premises owner's own actions or failure to act." 649 N.E.2d at 1030. The Estate, Tiffany and Alicia directly alleged that Lake Holiday was negligent.

Therefore, if the IRUS did apply, Lake Holiday would not be immune from liability for its own actions or failure to act.

[19] Additionally, Indiana Code section 14-22-10-2(f) states that the IRUS does not affect existing Indiana case law on the liability of owners or possessors of premises with respect to business invitees in commercial establishments, invited guests, or in situations implicating the attractive nuisance doctrine. As a result, since the allegations at issue here involve Lake Holiday's own acts or failure to act, then common law premises liability principles apply. If the IRUS were applicable to the circumstances, it would not affect Lake Holiday's liability if the attractive nuisance doctrine applied, or if Stately's status on the premises was as a business invitee or an invited guest.

## III. Status of Decedent

[20] The Estate's and Alicia and Tiffany's lawsuits are based on the theory that Lake Holiday owed a duty of care to Stately, which was violated by failing to keep the lake in a reasonably safe condition, negligently failing to cure any known hazardous conditions, and negligently failing to warn invitees of any known hazardous conditions.

[21] "Wrongful death actions are purely statutory." *Estate of Sears ex rel. Sears v. Griffin,* 771 N.E.2d 1136, 1138 (Ind. 2002). "At common law, there was no tort liability for killing another because personal injury actions did not survive the injured party's death." *Id.* The Wrongful Death Act, Indiana Code section 34-23-1-1 (1998), provides in relevant part that:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

[22] "Because wrongful death actions are in derogation of common law, the statute creating this right of action must be strictly construed." *Wolf v. Boren,* 685 N.E.2d 86, 88 (Ind. Ct. App. 1997), *trans. denied.* "Therefore, only those damages prescribed by statute may be recovered." *Id*.

[23] "A landowner's liability to persons on the premises generally depends on the person's status as a trespasser, licensee, or invitee." *Androusky v. Walter*, 970 N.E.2d 687, 691 (Ind. Ct. App. 2012). "While the determination of the duty owed by a landowner is ordinarily a question of law for the court to decide, 'it may turn on factual issues that must be resolved by the trier of fact.'" *Id*. (quoting *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008)).

In *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991), our Supreme Court examined premises liability law and the various statuses and corresponding duties in order to resolve the question of what duty a landowner owes to a social guest on his premises. "[A] landowner owes a trespasser the duty to refrain from willfully or wantonly (intentionally) injuring him after discovering his presence." *Id.* at 639. "[A]n Indiana landowner owes a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril." *Id.* Next, "a landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Id.*; *see also,* Restatement (Second) of Torts § 343 (1965).

Regarding a person's status, "[l]icensees and trespassers are those who enter premises for their own convenience, curiosity, or entertainment." 569 N.E.2d at 640. "Both groups take the premises as they find them." *Id.* "Unlike trespassers, however, licensees have a license to use the land. In other words, licensees are privileged to enter or remain on the land by virtue of the owner's or occupier's permission or suffrance." *Id.* Recognizing that various cases had mingled the analyses used to determine who was an invitee, the Supreme Court announced that it was adopting the invitation test, not the economic benefit test, and declared that "at least those persons described in the Restatement (Second) of Torts § 332 qualify as invitees[.]" *Id.* at 642. The Court held that "social guests are invitees . . . entitled to a duty of reasonable care from landowners as that duty is defined in Restatement (Second) of Torts § 343[.]" *Id.* at 643.

Here, the parties dispute Stately's status on Lake Holiday's premises. Rose referred to Stately and the others in his group as "fence jumpers." Appellants' Appendix p. 40. At the hearing on the motion for summary judgment, counsel for Lake Holiday argued that Stately was at best a licensee, but might be an invitee. Tr. p. 10. The Estate argues that Stately was an invitee, or that there is a genuine issue of material fact as to Stately's status on the premises.

We agree that the determination of Stately's status on the premises is extremely fact-sensitive. Because a trier of fact must determine his status, the entry of summary judgment was inappropriate. We remand this matter to the trial court for a factual determination of Stately's status.

## IV. Statutory Beneficiary

Lake Holiday raises a cross-appeal issue acknowledging that Brothers is the personal representative of Stately's Estate, but claiming that she is not a statutory beneficiary of the wrongful death claim at issue here.

After Brothers filed the complaint against Lake Holiday, Tuesday Ann Smith, who is not a party to the lawsuit, filed a paternity action in Lake County seeking to establish the paternity of her child, K.S. On July 23, 2012, the Lake County Court entered an order establishing that Stately was the biological father of K.S. The Lake County Court found that K.S. was entitled to receive all rights and interests in Stately's Estate.

[30] Lake Holiday contends that although Brothers, as personal representative of Stately's Estate, is entitled to prosecute the action for wrongful death, she is not entitled to any of the benefits of the action.

[31] In *Hosler ex rel. Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193 (Ind. Ct. App. 1999), *trans. denied*, a panel of this Court affirmed the trial court's dismissal of a wrongful death action. Almost two years after the decedent's death, the decedent's ex-wife, Vickie, the natural guardian and biological mother of the decedent's surviving minor son, filed a wrongful death action as next friend of the minor son. 710 N.E.2d at 195. No estate had been opened, and, consequently, no person had been appointed personal representative of the estate. *Id*.

[32] The defendant, Caterpillar, filed a motion to dismiss the complaint, contending that only the personal representative of the estate could prosecute the decedent's wrongful death action, and neither Vickie nor the surviving son could prosecute the action. *Id*. Later, after a hearing was held on Caterpillar's motion to dismiss, and months after the statute of limitations had run, a court in another county appointed Vickie personal representative of the decedent's estate for the sole purpose of prosecuting the wrongful death claim. *Id*. The same day, Vickie moved to have herself added to the complaint as an additional party to the complaint. *Id*. The trial court entered final judgment, denying Vickie's motion and granting Caterpillar's motion to dismiss. *Id*. at 195-96.

[33] We affirmed the trial court's decision concluding that Vickie did not file a wrongful death claim as the personal representative of the decedent's death, and that neither Indiana Trial Rule 15(C) (relation back of amended pleadings), nor Indiana Trial Rule 17(A) (real party in interest) could revive the lost cause of action. *Id*. at 199.

[34] Here, as Lake Holiday acknowledges, Brothers is prosecuting the complaint in her capacity as personal representative of Stately's Estate. Whether Brothers, in her capacity as a surviving parent of Stately, is entitled to any of the proceeds of Stately's Estate would have to be determined at the time of distribution at which others, including Smith on behalf of K.S., could assert their claims to the proceeds of Stately's Estate.

# Conclusion

[35] In light of the foregoing, we reverse the trial court's entry of summary judgment in favor of Lake Holiday and remand the matter to the trial court.

[36] Reversed and remanded.

Najam, J., and Robb, J., concur.