# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2017, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

William A. Keller
Sweeney Julian
South Bend, Indiana

Matthew J. Anderson
Tabor Law Firm, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Thomas F. Waggoner
Straub, Seaman & Allen, P.C.
St. Joseph, Michigan

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David A. Newton,<br>*Appellant,*<br><br>v.<br><br>Austin Indiana Holdings, LLC,<br>*Appellee.* | November 14, 2017<br><br>Court of Appeals Case No.<br>71A03-1704-CT-928<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable Jenny Pitts Manier, Judge<br><br>Trial Court Cause No.<br>71D05-1503-CT-101 |

**Bailey, Judge.**

# Case Summary

[1] Police officer David A. Newton ("Newton") slipped and injured his knee while trying to enter an apartment building owned by Austin Indiana Holdings, LLC ("AIH"). A lawsuit ensued, wherein AIH moved for summary judgment. The trial court entered summary judgment in favor of AIH and subsequently denied Newton's motion to correct error. Newton now appeals, contending that the trial court improperly granted summary judgment in favor of AIH.

[2] We reverse and remand for further proceedings.

# Facts and Procedural History

[3] Around 7:00 p.m. on January 4, 2015, the South Bend Police Department received a report of a shooting involving multiple victims. The shooting reportedly occurred at an apartment building on Calvert Street, and law enforcement believed that the shooter remained inside the building. Newton was one of several officers who responded to the scene.

[4] To reach the upstairs apartments, the officers had two options: there was a front entrance that AIH had barricaded and there was a rear entrance. Newton and another officer broke through the barricaded front entrance, and used that route to evacuate the uninjured occupants. The plan was to then bring the victims out the rear door, where an ambulance was waiting nearby.

[5] Newton waited outside the rear entrance while officers readied the victims for transportation. It was dark that winter evening. It had also snowed that day.

[6] Eventually, a sergeant radioed that the first victim was ready, and Newton approached the rear entrance. The entry consisted of three stairs leading to a door, and there was a handrail on the left side of the stairway. Newton began ascending the stairs, and kept his gun in his right hand, in case he encountered the shooter. At some point after Newton reached the top step, he slipped and fell. Newton suffered an injury to his knee, which required surgery.

[7] Newton filed a lawsuit against AIH, alleging that "[t]he failure to clear, salt, provide handrails and/or otherwise make the common area safe for ingress and egress to the building and/or the failure to warn [Newton] that said common area had been left in a dangerous condition, constitutes negligent and/or reckless conduct on [the] part of the Defendant." Appellee's App. Vol II at 3. AIH filed a motion for summary judgment, which the trial court granted. Newton then filed a motion to correct error, which the trial court denied.

[8] This appeal ensued.

# Discussion and Decision

[9] Newton appeals from the denial of a motion to correct error. "Rulings on motions to correct error are typically reviewable under an abuse of discretion standard; however we review the matter *de novo* when the issue on appeal is purely a question of law." *State v. Gonzalez-Vazquez*, 984 N.E.2d 704, 706 (Ind. Ct. App. 2013), *trans. denied*. Here, the motion to correct error related to whether the trial court erred in determining that AIH was entitled to summary

judgment, which is a question of law subject to *de novo* review. *See, e.g.,* *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

[10] "When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law." *Id.* The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). "Summary judgment is improper if the movant fails to carry its burden," *McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 824 (Ind. 2017), but if it succeeds, "the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts." *Goodwin*, 62 N.E.3d at 386. In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter that the parties have specifically designated to the trial court, *see* Ind. Trial Rule 56(C), and construes all designated evidence and resolves all doubts in favor of the non-moving party. *Town of Avon v. W. Cent. Conservancy Dist.*, 957 N.E.2d 598, 602 (Ind. 2011). Ultimately, "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). "In this respect, Indiana's summary judgment procedure abruptly diverges from federal summary judgment

practice," *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994), and under our standard, "[s]ummary judgment is rarely appropriate in negligence cases." *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996).

[11] Here, Newton alleged that AIH negligently caused his knee injury. "[T]o prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin*, 62 N.E.3d at 386 (quoting *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). Absent a duty there can be no negligence or liability. *Id.* Moreover, "[w]hether a duty exists is a question of law for the court to decide," *id.* at 386-87, but "a judicial determination of the existence of a duty is unnecessary where the element of duty has 'already been declared or otherwise articulated.'" *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016) (quoting *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003)).

[12] "Indiana courts have long said that the entrant's status on the land determines the duty that the landowner (or occupier) owes to him." *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991). An entrant will have one of three statuses, that of: an invitee (to whom the landowner owes the greatest duty), a licensee, or a trespasser (to whom the landowner owes the least duty). *See id.* at 639-40. The distinguishing characteristic of an invitee is that an invitee is on the land by invitation, justifying an expectation that the land has been prepared and made safe for the visit. *See id.* at 642. Invitees include social guests; invited business

visitors for a purpose connected to business dealings; and, when the land has been held open for a public purpose, members of the public. *Id.* at 642-43. In contrast, licensees "are privileged to enter or remain on the land by virtue of the owner's or occupier's permission *or sufferance.*" *Id.* at 640 (emphasis added). "[F]iremen, policemen, and other officers who respond in their professional capacities [are] classified as licensees for purposes of landowner liability." *Sports Bench, Inc. v. McPherson*, 509 N.E.2d 233, 235 (Ind. Ct. App. 1987), *trans. denied.* Thus, in this case, Newton was a licensee.[1]

[13]    "[A]n Indiana landowner owes a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril." *Burrell*, 569 N.E.2d at 639. An Indiana landowner "also has a duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge." *Id.* A latent danger is "[a] danger that is not obvious or visible." Black's Law Dictionary (10th ed. 2014). As to knowledge of the latent danger, liability will attach if the landowner has actual knowledge or constructive knowledge of the dangerous condition. *Bell v. Horton*, 411 N.E.2d 648, 651 (Ind. Ct. App. 1980). Yet, if the landowner "knows of the existence of a condition, but has no reason to know that it is dangerous, then he is under no duty to [warn]." Restatement (Second) of Torts § 342 cmt. d (1965).

---

[1] Newton argues that he should be considered an invitee, and advances policy arguments as to why a change in the law is warranted to extend greater protection to police officers. Yet, we are obligated to follow precedents established by the Indiana Supreme Court, *Garrison v. Ford*, 53 N.E.3d 454, 456 (Ind. Ct. App. 2016), and application of the standards articulated in *Burrell* leads to the conclusion that Newton is a licensee.

[14]     Newton argues that AIH did not negate an element of his negligence claim and is thus not entitled to summary judgment. In his complaint, Newton alleges that AIH had negligently "fail[ed] to clear, salt, provide handrails and/or otherwise make the common area safe for ingress and egress to the building" and had "fail[ed] to warn [Newton] *that said common area had been left in a dangerous condition.*"[2] Appellee's App. Vol II at 3. In moving for summary judgment, AIH conceded that it owed to Newton all duties owed to a licensee. AIH focused its motion on a single condition affecting the stairs—the presence of snow and ice—and contended that the snow and ice did not constitute a latent danger that would generate a duty to warn. Yet, the complaint alleges more than just the presence of snow and ice. Indeed, under the complaint, AIH could be liable to Newton for a host of latent dangers. Thus, to succeed on its motion for summary judgment, AIH was obligated to demonstrate that it had *no knowledge* of *any* latent danger affecting the rear entrance. *See Jarboe*, 644 N.E.2d at 123 ("Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence."). But AIH failed to do so.

---

[2] Newton later supported his allegations with an expert report identifying several allegedly unsafe conditions that would not have been obvious to someone ascending the stairs. One condition was the configuration of the handrail. The expert report stated that the "[i]mportant purposes of a handrail are to prevent a loss of balance, or if balance is lost, to help a person to regain balance." Appellant's App. Vol. II at 129. According to the report, the installed handrail was not high enough at the top and was too wide to grasp—dangerous conditions contrary to code, and exacerbated by the presence of snow and ice.

[15] On appeal, AIH attempts to justify its narrow focus on the snow and ice. That is, AIH argues that only snow and ice—and not any other latent danger—could have been the proximate cause of Newton's fall. But, "[a]n injury may have more than one proximate cause," *Hellums v. Raber*, 853 N.E.2d 143, 146 (Ind. Ct. App. 2006), and proximate cause is generally a question of fact reserved for the fact finder. *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004). It is only the rare case in which it is appropriate to determine proximate cause as a matter of law: "where only a single inference or conclusion can be drawn" from the evidence. *Id.* And this is not the rare case. Rather, the evidence designated to the trial court supports a reasonable inference that an inadequate handrail may have played a role in Newton's injury—that is, that Newton could have regained balance had the handrail been better positioned with a graspable surface.[3]

[16] A party moving for summary judgment must demonstrate that it is entitled to judgment as a matter of law. In this case, AIH designated evidence indicating that it had no duty to warn Newton of obvious snow and ice. But AIH failed to designate evidence demonstrating that it had no knowledge of *any* latent danger affecting the rear entrance. In arguing that it nonetheless met its burden, AIH

---

[3] We are unpersuaded by AIH's assertion that Newton should be estopped from relying on alleged deficiencies in the handrail because Newton had previously testified to not using a handrail and to believing that no handrail was present at the time of the fall. It is reasonable to infer that Newton failed to use the handrail to regain balance after he slipped precisely because the handrail was poorly placed. Moreover, to the extent AIH argues that the position of the handrail was visible and not a latent danger, AIH has not demonstrated that the alleged deficiencies would have been obvious to an entrant. *See* Black's Law Dictionary (10th ed. 2014) (defining "latent danger" as "[a] danger that is not obvious or visible").

directs us to evidence indicating that it had no knowledge of any other slips and falls on the property—but this evidence falls short of demonstrating a lack of any pertinent knowledge that would have generated a duty to warn Newton.[4]

[17] Ultimately, AIH's designated evidence leaves open the possibility that (1) a latent danger in the handrail configuration was a proximate cause of Newton's injury, (2) AIH knew of that danger, and (3) AIH failed to warn Newton. Thus, the designated evidence does not negate an element of Newton's claim, and we accordingly conclude that the grant of summary judgment was in error.

## Conclusion

[18] The designated evidence does not demonstrate that AIH is entitled to summary judgment.

[19] Reversed and remanded for further proceedings.

Baker, J., and Altice, J., concur.

---

[4] AIH also points out that the rear entrance, being the only usable entrance, was used on a regular basis without incident. AIH argues that, in light of the daily use, it had no reason to "appreciate the danger of the stairs or railing and therefore did not have knowledge necessitating a duty to warn." Appellee's Br. at 30. For support, AIH directs us to *Thompson v. Murat Shrine Club, Inc.*, 639 N.E.2d 1039 (Ind. Ct. App. 1994), which involved a loft that had been used every day for several years before it collapsed and caused injury. The Court concluded that "through daily use, the loft did not pose a known or unanticipated danger," *Thompson*, 639 N.E.2d at 1042, and ultimately upheld the grant of summary judgment in favor of the landowners. Here, however, the allegedly deficient handrail had been only recently installed. Moreover, Newton's expert opined that "[e]ven though a 'handrail' has been installed, the fact that it is essentially useless makes it very dangerous" in that "[a] normally attentive person can see that it is there, but they cannot see and recognize that it is usable." Appellant's App. Vol. II at 129.